IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JUSTIN R., by and through his mother JENNIFER R., | CIVIL NO. 10-00657 LEK-RLP |
| Plaintiffs, | |
| vs. | |
| KATHRYN MATAYOSHI, in her official capacity as Superintendent of the Hawai'i Public Schools; and DEPARTMENT OF EDUCATION, STATE OF HAWAII, | |
| Defendants. | |

**ORDER AFFIRMING IN PART AND REVERSING IN PART
THE HEARINGS OFFICER'S OCTOBER 11, 2010 DECISION**

Before the Court is an appeal by Plaintiffs Justin R., by and through his mother, Jennifer R. (collectively "Plaintiffs") of the administrative hearings officer's ("Hearings Officer") Findings of Fact, Conclusions of Law and Decision ("Decision"), filed on October 11, 2010. Plaintiffs filed their Opening Brief in the instant case on February 28, 2011. Defendants Kathryn Matayoshi, in her official capacity as Superintendent of the Hawaii Public Schools, and the Department of Education, State of Hawai`i ("the DOE", both collectively "Defendants") filed their Answering Brief on March 28, 2011, and Plaintiffs filed their Reply Brief on April 25, 2011. The Court heard oral argument in this matter on May 16, 2011. Appearing on

behalf of Plaintiffs was Irene Vasey, Esq., and appearing on behalf of Defendants was Gary Suganuma, Esq. On May 19, 2011, Plaintiffs filed a supplement regarding their citation of unpublished cases in their briefs. After careful consideration of the parties' briefs, the arguments of counsel, and the relevant legal authority, the Decision is HEREBY AFFIRMED IN PART AND REVERSED IN PART because, although the Hearings Officer correctly ruled that he lacked jurisdiction over the portion of Plaintiffs' request for impartial hearing seeking to enforce a settlement agreement between the parties, the Hearings Officer had jurisdiction over, and should have ruled upon, the remainder of Plaintiffs' request, including the allegation that two of Student's individualized educational programs failed to provide him a free and appropriate public education.

## BACKGROUND

Plaintiffs filed their Complaint on November 10, 2010 pursuant to the Individuals with Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1400 <u>et</u> <u>seq.</u> Plaintiffs appeal from the Hearings Officer's Decision dismissing Plaintiffs' Request for Impartial Hearing for lack of subject matter jurisdiction.[1] Defendants filed their Answer on December 2, 2010.

## I. Factual and Administrative Background

At the time of the Decision, Justin R. ("Student" or

---

[1] The Decision can be found in the Administrative Record on Appeal ("ROA") at 75-85 and as Exhibit A to the Complaint (dkt. no. 1-1).

"Justin") was seventeen years old and a senior at Kailua High
School.  He has been eligible for IDEA services since 2000.  The
DOE originally classified Student under the category of Mental
Retardation, but the DOE retested him in October 2003.  In or
around April 2004, the DOE reclassified him under the category of
Other Health Impaired.  [Decision at 4.]  In a May 22, 2009
report, Peggy Murphy-Hazzard, Psy.D., diagnosed Student with
attention deficit hyperactivity disorder ("ADHD"), oppositional
defiant disorder, receptive-expressive language disorder, and
learning disorders, not otherwise specified.  Dr. Murphy-Hazzard
recommended, *inter alia*, one-to-one tutoring to remediate
Student's math, reading, and writing skills.  [ROA, Pets.' Exh.
21 at 9 (ROA pg. 137).]

A.    **2008-2009 Request for Impartial Hearing**

On February 12, 2009, Plaintiffs filed a Request for
Impartial Hearing, identified as Docket Number DOE-SY0809-088
("2008-2009 RIH").  [ROA, Pets.' Exh. 1 (ROA pgs. 1-4); Decision
at 4.]  The hearing on the 2008-2009 RIH was originally scheduled
for April 2009, but was continued until November 2009 based on
Plaintiffs' request.  On or about November 9, 2009, Plaintiffs
and the DOE began negotiating a settlement of the issues raised
in the 2008-2009 RIH.  [Decision at 4-5.]  Jennifer R. ("Mother")
and the DOE executed a Settlement Agreement on January 12, 2010.
[ROA, Pets.' Exh. 3 ("Settlement Agreement") (ROA pgs. 9-10).]
The terms of the Settlement Agreement were, in pertinent part:

2)    DOE agrees to provide remedial after school
      tutoring for one hour on school days for the
      remainder of [school year ("SY")] 09-10 and
      first semester SY 10-11.  Tutoring will be in
      a small group not to exceed six students.
      Student will be provided specialized
      instruction in math and reading.

3)    DOE agrees to provide two four-hour tutoring
      sessions a week from June 1-July 30, 2010.
      Tutoring will be in a small group not to
      exceed six students.  Student will be
      provided specialized instruction in math and
      reading.

      . . . .

5)    If Justin is accepted into the ETC automotive
      training program at Honolulu Community
      College during the second semester SY 2010-
      2011, DOE will pay for the tuition costs.

6)    If Justin successfully completes the ETC
      automotive training program at Honolulu
      Community College (HCC) during the second
      semester SY 2010-2011, DOE will pay tuition
      costs for four semesters at HCC if Justin is
      working towards his associative degree in
      automotive mechanics. . . .

7)    If Justin is not accepted into the ETC
      automotive training program at HCC but
      graduates from high school with a diploma,
      DOE will pay tuition costs for four semesters
      at HCC towards Justin's associative degree in
      automotive mechanics. . . .

      . . . .

[Id. at 1-2.]  The Settlement Agreement also states: "The parties

agree to release each other, not sue each other, and discharge

each other from any and all claims or actions arising out of,

resulting from, or connected with any and all issues relating to

the student's education up to, through, and including the date of

the petition for impartial due process hearing."  [Id. at 2.]

**B.** **2009-2010 Request for Impartial Hearing**

During the pendency of the proceedings on the 2008-2009 RIH, Student's individualized educational program ("IEP") team met on or about March 3, 2009. Mother attended this meeting. Based on information presented during that meeting, the team developed an IEP for Student ("March 3, 2009 IEP").[2] Student's IEP team also met on or about October 28, 2009, with Mother in attendance. Based on information presented during that meeting, the team developed another IEP for Student ("October 28, 2009 IEP").[3] [Decision at 4.]

On June 18, 2010, Plaintiffs submitted a Request for Impartial Hearing, identified as Docket Number DOE-SY0910-141 ("2009-2010 RIH").[4] It was filed with the Department of Commerce and Consumer Affairs ("DCCA") on June 22, 2010. The 2009-2010 RIH challenged various aspects of the March 3, 2009 IEP and the October 28, 2009 IEP. [ROA at 5.] In addition, it alleged that the "DOE failed to convene an IEP meeting following the January 2010 settlement agreement to incorporate the terms of the agreement into Justin's IEP, and failed to provide the services

---

[2] The March 3, 2009 IEP and the three associated Prior Written Notices ("PWN") for that IEP are in the ROA as Petitioners' Exhibit 12. [ROA at 58-73.]

[3] The October 28, 2009 IEP and the PWN associated therewith are in the ROA as Petitioners' Exhibit 13. [ROA at 74-85.]

[4] The 2009-2010 RIH can be found in the ROA at 3-7. The 2009-2010 RIH is not consecutively paginated. All citations to the 2009-2010 RIH refer to the page numbers in the ROA.

and supports agreed upon." [Id.] Plaintiffs' proposed

resolutions included the following:

> 1.   One-to-one tutoring in reading after school 1
> hour per day.  Reading materials will include
> subjects applicable to preparing Justin for his
> goal of becoming an automotive mechanic.
>
> 2.   One-to-one tutoring in math after school 1
> hour per day. (either during open/study period or
> after school.
>
> 3.   One hour of 1:1 make-up reading tutoring
> three times per week beginning immediately with
> the 2010 summer [extended school year ("ESY")]
> program and continuing until two hours per day for
> 8 weeks has been provided.
>
> 4.   One hour of 1:1 make-up math tutoring twice
> per week beginning immediately with the 2010
> summer ESY program and continuing until two hours
> per day for 8 weeks has been provided.
>
> 5.   Provision of a compensatory remedial reading
> program with measurable outcomes with the goal of
> bringing Justin up to grade level reading
> comprehension, or reimbursement of costs for a
> private remedial reading program to provide same.
>
> .  .  .  .

[ROA at 7.]

The DOE filed its response to the 2009-2010 RIH with

the DCCA on June 28, 2010.  The DOE addressed the alleged defects

in the March 3, 2009 IEP and the October 28, 2009 IEP.  [ROA at

14-16.]

Plaintiffs filed their Opening Brief with the DCCA

("Plaintiffs' Hearing Opening Brief") on August 31, 2010.[5]

_____

[5] Plaintiffs' Hearing Opening Brief can be found in the ROA
at 30-38.

Plaintiffs emphasized that "Justin has had a difficult time in school because of a lack of appropriate education plans in his public school classes due to faulty IEPs." [Pltfs.' Hrg. Opening Br. at 2.] Plaintiffs suggested that his original classification as mentally retarded was never justified, and they noted that, in September 2003, when Mother requested that the DOE reevaluate him, the DOE responded that he was not capable of education within the general student population because of his mental retardation and ADHD. [Id.] Plaintiffs asserted that, although Student's classification was drastically changed in April 2004, "teachers and other I.E.P. team member's perceptions and expectations of Justin's academic abilities did not appear to alter[.]" [Id. at 2-3.] As a result, Student's reading and math standardized test scores remained at an elementary school level, although his IEPs have consistently reflected his goal of graduating and pursuing a career as an automotive technician. Plaintiffs argued that Student's reading and math skills were no where near the level necessary for him to successfully attend automotive training classes in community college. [Id. at 3.] Plaintiffs stated:

> In order to achieve his goals, Justin must significantly improve both his reading and math skills in this, his final year of high school, in order to continue onto the secondary education promised him by DOE (see discussion of Exhibit "A" in paragraph (C) below).[6]

---

[6] Exhibit A to Plaintiffs' Hearing Opening Brief is the Settlement Agreement, [ROA at 35-36,] and Section I.C. of

> Justin requires immediate, intensive, and
> frequent 1:1 remedial tutoring in both math and
> reading, as well as a 1:1 tutor to assist him with
> his daily class work and homework assignments.

[Id.] Plaintiffs emphasized that Student's IEP team never
incorporated the terms of the Settlement Agreement into Student's
IEP and that the team never met to discuss alterations in
Student's post-high school transition plan to reflect his
anticipated community college attendance. [Id. at 4.]

Plaintiffs argued that, because the DOE did not provide
the services promised in the Settlement Agreement, Student had a
critical need to accelerate his learning curve in reading and
math to allow him to obtain his diploma and continue on to
community college. [Id. at 4-5.] Finally, Plaintiffs reiterated
their requests, including "[f]or DOE to agree to honor their
prior agreements contained in the settlement agreement executed
January 12, 2010 and incorporate its terms into Justin's IEP
plan[.]" [Id. a 5 (citation omitted).]

The Hearings Officer conducted a hearing on the
2009-2010 RIH on September 8 and September 10, 2010. [Decision
at 3.] The parties then submitted written closing arguments.
[ROA at 41-57 (DOE's Closing Brief), 58-74 (Petitioners' Closing
Brief).] Plaintiffs' Closing Brief to the Hearing Officer
emphasized their argument that Student's March 3, 2009 IEP and
October 28, 2009 IEP were procedurally and substantively flawed

_____

Plaintiffs' Hearing Opening Brief discusses the Settlement
Agreement [ROA at 32-33].

and did not provide him with a free and appropriate public education ("FAPE"). [ROA at 59-69.] One component of that argument was that the DOE failed to incorporate the terms of the Settlement Agreement into Student's IEPs. [ROA at 68-69.] Plaintiffs stated that they sought one-to-one tutoring for Student, as opposed to the small group tutoring provided in the Settlement Agreement, "due to Justin's need for more focused and accelerated instruction due to the shorted time frame." [ROA at 71.] Plaintiffs, however, reiterated their request that the DOE agree to honor the Settlement Agreement and incorporate its terms into Student's IEP. Plaintiffs also asked that an IEP team meeting be held to review Student's goals and objectives, and make any appropriate changes, in light of the revisions to Student's objectives. [ROA at 72.]

In the Decision, the Hearings Officer identified the issues presented in the 2009-2010 RIH as:

1.  Whether any of the terms of the Settlement Agreement dated January 12, 2010 have ever been integrated into Student's individual education plan; and whether an IEP containing student's [sic] agreed upon tutoring sessions or his altered transitional plan for post-high school automotive training at DOE expense has been issued, or even discussed by the IEP team.

2.  Whether student's [sic] October 28, 2009 IEP annual goal to "advance from the novice to the proficient level as measured on the HCPS III Reading Comprehension Rubric for Standard" and the attendant benchmarks are measurable.

3.  Whether the small group after-school tutoring

in reading and math agreed to by the DOE in
the January 12, 2010 Settlement Agreement was
provided.

4.      Whether the specialized summer remedial
        tutoring of four hours per week from June 1,
        2010 to July 30, 2010, as agreed upon in the
        January 12, 2010 Settlement Agreement was
        provided.

5.      Whether the student's [sic] Behavioral
        Support Plan, as agreed upon in the January
        12, 2010 Settlement Agreement, was
        implemented and followed with respect to
        student's [sic] suspensions . . . .

[Decision at 3-4.]  In his findings of fact, the Hearings Officer

found that Plaintiffs made a specific demand to enforce the

Settlement Agreement.  The Hearings Officer also noted that

Plaintiffs' demands for remedial tutoring were in response to the

DOE's failure to comply with the Settlement Agreement.  [Id. at

6-7.]  The Hearings Officer also quoted a portion of Mother's

testimony at the hearing in which she stated that, if the DOE had

performed its obligations under the Settlement Agreement, the

parties would not be in the hearing process.  When asked whether

she was taking the position that the Settlement Agreement was no

longer effective, Mother responded no and stated that they were

doing the reading tutoring and working on the math tutoring.

Mother, however, argued that, if the services had started in

January 2010 as promised, Student would be in a much better

position.  The Hearings Officer found that neither party

contested the binding and enforceable nature of the Settlement

Agreement.  [Id. at 7-8.]

In his conclusions of law and analysis, the Hearings Officer concluded that:

> In this case, Petitioners are clearly seeking to enforce the provisions of the January 12, 2010 settlement agreement . . . . Each of Petitioners' proposed resolutions in the instant matter either derive from, or demand enforcement of, the January 12, 2010 Settlement Agreement. This enforcement dispute is purely a matter of determining Respondent's obligation under the settlement agreement and demands additional remedies resulting from Respondent's alleged breach of the settlement agreement. It does not concern the identification, evaluation or educational placement of the Student or the provision of a free and appropriate public education. Here, Petitioners (sic) proposed resolutions are mooted by the January 12, 2010 settlement agreement as Petitioners are already entitled to their resolutions through the agreement. The additional services would be potential remedies of a breach of contract action against Respondent.

[Decision at 9-10.] The Hearings Officer therefore concluded that he lacked subject matter jurisdiction and dismissed the 2009-2010 RIH. The Hearings Officer noted that the decision did not preclude any action by Plaintiffs against the DOE to enforce the Settlement Agreement "in the proper forum." [Id. at 10.]

## II. Plaintiffs' Opening Brief

In their Opening Brief in the instant case, Plaintiffs emphasize that Student has not progressed academically, as evidenced by his Hawaii State Assessment results from 2001 to 2009. He consistently scored "well below proficiency" in math, and went from "approaching proficiency" in reading in 2006 to "well below proficiency" in 2008 and 2009. [Opening Br. at 2-3

(citing PE[7] 31).]  As of October 2009, Student's Stanford

Diagnostic Reading Test score was equivalent to grade 3.9.  [<u>Id.</u>

at 3 (citing PE 13, p.2).]  Plaintiffs state that Mother filed

the 2009-2010 RIH because she was extremely concerned about

Student's ability to transition successfully to post-high school

education.  [<u>Id.</u> at 4.]

        Plaintiffs acknowledge that, although the 2009-2010 RIH

and the evidence presented at the administrative hearing

addressed the specific ways the DOE failed to provide Student a

FAPE, the remedies sought focused on remedial reading and math

tutoring.  Plaintiffs, however, emphasize that the IEPs

challenged in the 2009-2010 RIH were not the same as those

challenged in the 2008-2009 RIH and that the requested tutoring

services in the 2009-2010 RIH were not the same as those promised

in the Settlement Agreement.  Mother essentially believes that

the tutoring called for in the Settlement Agreement is no longer

sufficient to prepare Student for graduation due to the fact that

the DOE failed to begin the tutoring immediately under the terms

of the Settlement Agreement.  Plaintiffs emphasize that, despite

the set backs, Student is still looking forward to graduating and

attending HCC.

        Plaintiffs argue that the Hearings Officer abused his

discretion by dismissing their case based on lack of subject

matter jurisdiction.  Plaintiffs state that a special education

_____

        [7] "PE" refers to the ROA, Petitioners' Exhibit.

settlement agreement is generally considered a contract and is
subject to the general rules of contract interpretation.
Plaintiffs note that there is conflicting case law about whether,
and under what circumstances, a hearings officer has jurisdiction
over questions of compliance with a previous order or agreement.

Plaintiffs emphasize that they are not, and were not,
attempting to enforce the Settlement Agreement, nor are they
contending that the Settlement Agreement is void or otherwise
unenforceable. They acknowledge that Mother testified at the
hearing that she believes the Settlement Agreement is still in
force and that she was satisfied with the Agreement. Plaintiffs
contend that the instant case only seeks the provision of
intensified tutoring services because the March 2009 and
October 2009 IEPs are not appropriate. Plaintiffs point out
that, in the DOE's Closing Brief to the Hearings Officer, it
acknowledged that the 2009-2010 RIH sought more than the
enforcement of the Settlement Agreement. [Id. at 13.]

Plaintiffs argue that a hearings officer has
jurisdiction to adjudicate claims that a defendant denied a
student a FAPE as a result of the defendant's violation of prior
settlement agreement and that such claims are distinguishable
from claims that merely allege a breach of the agreement.
Plaintiffs contend that the Hearings Officer had subject matter
jurisdiction over their case because the Hearings Officer could
consider Defendants' breach of the Settlement Agreement in a due

process proceeding based on the alleged denial of a FAPE. Plaintiffs note that 20 U.S.C. § 1415(b)(6)(A) defines a hearings officer's jurisdiction, and they argue that nothing in that provision precludes the hearings officer from taking jurisdiction over a case in which a prior settlement agreement is at issue. Plaintiffs contend that they established, by a preponderance of evidence, that Defendants denied Student a FAPE and failed to prepare him to transition from high school to post-secondary education.

Plaintiffs also argue that the Hearings Officer had jurisdiction because they could not have filed suit to enforce the Settlement Agreement without first exhausting their administrative remedies. Further, their claims do not fall within the time period covered by the waiver in the Settlement Agreement. The Settlement Agreement was expressly limited to the period up to the filing of the 2008-2009 RIH, and the 2009-2010 RIH challenged IEPs formulated after that date. Plaintiffs never agreed to waive liability for those claims.

Plaintiffs assert that this Court should not accord substantial deference to the Decision. Plaintiffs emphasize that the Hearings Officer conducted a full hearing on the merits and that both sides presented oral and written evidence. [Id. at 1.] The Hearings Officer, however, did not discuss any of the testimony or evidence, did not examine the issue whether Defendants provided Student a FAPE, and did not attempt to

distinguish the terms of the Settlement Agreement from the issues in the 2009-2010 RIH. Plaintiffs contend that the Decision is based on conclusory statements, and they argue that the Decision is not the result of a thorough and careful analysis of the evidence. They urge the Court to give the Decision very little deference.

Finally, Plaintiffs argue that the Court should reverse the Hearings Officer's ruling that there was no subject matter jurisdiction, and they argue that the Court should examine the administrative record and make a finding on the merits. Plaintiffs contend that the Court should not remand the case for the Hearings Officer to make a ruling on the merits because Student is about to graduate from high school and will no longer be eligible for IDEA services. Further, the Hearings Officer has left the DCCA and, on remand, another officer must familiarize himself or herself with the case before ruling and may have to re-call witness to testify. [Opening Br. at 26.]

## III. **Defendants' Answering Brief**

In their Answering Brief, Defendants argue that Plaintiffs' evidence at the hearing focused on the DOE's failure to deliver, or delay in delivering, the tutoring services required under the Settlement Agreement. Plaintiffs' position is that the failure/delay adversely affected Student's progress in reading and math and therefore Student is entitled to additional and more intensive tutoring services than provided for in the

Settlement Agreement to compensate for the lost progress.
Defendants argue that the Court should affirm the Decision, which
is supported by the applicable law and by credible evidence in
the record.

Defendants argue that the 2009-2010 RIH and Mother's
testimony at the hearing provide ample evidence to support the
Hearings Officer's finding that Plaintiffs were seeking to
enforce the Settlement Agreement.  In particular, Defendants
point to Mother's testimony that the alleged breach of the
Settlement Agreement was the reason they filed the 2009-2010 RIH.
[Answering Br. at 9 (quoting ROA, Trans., Vol. 1, p. 91, lines 2-
5, p. 112, lines 2-7).]  Defendants argue that the Court should
not reverse the Hearings Officer's finding that Plaintiffs sought
to enforce the Settlement Agreement in the 2009-2010 RIH.

Defendants next argue that the Hearings Officer
correctly determined that he lacked jurisdiction to enforce the
Settlement Agreement.  Haw. Admin. R. § 8-60-61(a)(1) sets forth
the proper subjects of a due process complaint, and it does not
include the enforcement of settlement agreements.  Defendants
argue that the question whether Plaintiffs are entitled to any
missed or additional tutoring because of the DOE's alleged breach
of the Settlement Agreement is an issue that a court could
decide; the issue does not present any technical issues which a
hearings officer should rule upon during a due process hearing.
Defendants emphasize that Plaintiffs did not offer any expert

testimony at the hearing.  In Defendants' view, this case is about the Settlement Agreement and what remedies may be available for any breach thereof and the Hearings Officer correctly determined that he did not have jurisdiction over the case.

## IV. **Plaintiffs' Reply Brief**

In their Reply Brief, Plaintiffs emphasize that, by the end of SY 2009-2010, neither Student's March 2009 IEP or his October 2009 IEP had been amended to add the services required in the Settlement Agreement.  Further, Student did not receive any remedial tutoring for the entire SY 2009-2010.  This prompted the filing of the 2009-2010 RIH, in which Plaintiffs sought compensatory education in the form of more intensive and more frequent tutoring than provided for in the Settlement Agreement. [Reply Br. at 3.]

Plaintiffs agree with the basic legal principles that: 1) a hearings officer has no mechanism to force parties to comply with a settlement; and 2) a special education settlement agreement is a contract that is subject to the interpretation under contract law.  Plaintiffs, however, state that they are not seeking to enforce the Settlement Agreement; they seek compensatory education because the services provided in the March 2009 and October 2009 IEPs and in the 2010 ESY period were insufficient.  [Id. at 3-4.]

Plaintiffs acknowledge that, if all they sought to do was enforce the four-corners of the Settlement Agreement, the

dismissal of their case would have been proper. Plaintiffs, however, claimed that the failure to honor the Settlement Agreement had a negative impact on Student's educational progress and resulted in a denial of FAPE. [Id. at 4.] Plaintiffs argue that, in such cases, the hearings officer has jurisdiction over the student's claims and can consider the violation of the settlement agreement as part of the analysis whether the defendant denied the student a FAPE.

In conclusion, Plaintiffs ask the Court to: vacate the Decision; find that the DOE denied Student a FAPE; and order the compensatory educational relief that Plaintiffs have requested.

## STANDARDS

### I.  IDEA Overview

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." Hoeft ex rel. Hoeft v. Tuscon Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310, 108 S. Ct. 592, 597, 98 L. Ed. 2d 686 (1988)).  It ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).

The IDEA defines FAPE as

> special education and related services that –
> (A) have been provided at public expense,
> under public supervision and direction, and
> without charge;
> (B) meet the standards of the State
> educational agency;
> (C) include an appropriate preschool,
> elementary school, or secondary school
> education in the State involved; and
> (D) are provided in conformity with the
> individualized education program required
> under section 1414(d) of this title.

20 U.S.C. § 1401(9). To provide a FAPE in compliance with the

IDEA, a state educational agency receiving federal funds must

evaluate a student, determine whether that student is eligible

for special education, and formulate and implement an IEP. <u>See</u>

<u>generally</u> 20 U.S.C. § 1414. The IEP is to be developed by an

"IEP Team" composed of, *inter alia*, school officials, parents,

teachers and other persons knowledgeable about the child.

§ 1414(d)(1)(B).

## II.  <u>Standard of Review</u>

The standard for district court review of an

administrative decision under the IDEA is set forth in 20 U.S.C.

§ 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the
> court –
> (i) shall receive the records of the
> administrative proceedings;
> (ii) shall hear additional evidence at the
> request of a party; and
> (iii) basing its decision on the
> preponderance of the evidence, shall grant
> such relief as the court determines is
> appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings. <u>L.M. v. Capistrano Unified Sch. Dist.</u>, 556 F.3d 900, 908 (9th Cir. 2009) (citations omitted). The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling. <u>J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.</u>, 626 F.3d 431, 438 (9th Cir. 2010) (citing <u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" <u>L.M. v. Capistrano</u>, 556 F.3d at 908 (quoting <u>Capistrano Unified Sch. Dist. v. Wartenberg</u>, 59 F.3d 884, 892 (9th Cir. 1995)). The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." <u>Cnty. of San Diego v. Cal. Special Educ. Hearing Office</u>, 93 F.3d 1458, 1466-67 (9th Cir. 1996) (citation and quotation marks omitted)).

The burden of proof in an IDEA appeal proceeding is on the party challenging the administrative ruling. <u>Hood v. Encinitas Union Sch. Dist.</u>, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must show, by a preponderance of the evidence, that the hearing decision should

be reversed.  J.W., 626 F.3d at 438 (citations omitted).

**DISCUSSION**

**I.  Unavailable Decisions**

At the outset, the Court notes that Plaintiffs cited
numerous administrative hearings decisions and an unpublished
decision from the Eastern District of Pennsylvania in their
Opening Brief and Reply Brief.  Plaintiffs, however, have not
attached copies of these decisions, and these decisions do not
appear to be available through Westlaw.  At the oral argument,
this Court informed Plaintiffs' counsel that the Court would not
consider these decisions unless Plaintiffs provided the Court
with either a copy of each decision or a Westlaw citation for
each decision.  [Minutes, filed 5/16/11 (dkt. no. 28).]

On May 19, 2011, Plaintiffs filed their Corrected
Submission of Plaintiffs' Citation of Westlaw Cases ("Citation
Submission").  [Dkt. no. 30.]  Plaintiffs' Citation Submission
provided Westlaw citations and copies of seven court decisions
cited in their briefs.  Plaintiffs, however, did not provide
Westlaw citations or copies of the administrative hearing
decisions that they cited, nor did they provide a Westlaw
citation or a copy of Marcia Lyons & Heloise Baker v. Lower
Merion Sch. (2:09-cv-05576 E.D. Pa. (Dec. 2010)).  [Opening Br.
at 17.]  This Court previously warned Plaintiffs that it would
not consider these decisions unless they provided a copy of the
decision or a Westlaw citation, and the Court provided Plaintiffs

with the opportunity to supplement their briefs.  Plaintiffs,
however, failed to provide the necessary information.  The Court
therefore will not consider those decisions in ruling on
Plaintiffs' appeal.

**II.  <u>The Hearings Officer's Subject Matter Jurisdiction</u>**

The Hearings Officer ruled that he did not have subject
matter jurisdiction over Plaintiffs' case because it essentially
sought to enforce the Settlement Agreement.  [Decision at 9-10.]
Plaintiffs argue that this was reversible error.

Plaintiffs and Defendants do not dispute that, as a
general rule, where the parties in an IDEA dispute voluntarily
enter into a settlement agreement, the agreement constitutes a
binding contract that is enforceable against the parties.  <u>See,
e.g.</u>, <u>D.R. by M.R. v. E. Brunswick Bd. of Educ.</u>, 109 F.3d 896,
901 (3d Cir. 1997).  In the instant case, this Court must
consider what actions a parent may take if the school system does
not abide by the terms of the settlement agreement.

First, the Court notes that, courts have recognized
that, pursuant to 20 U.S.C. § 1415(e)(2)(F) and §
1415(f)(1)(B)(iii), there is federal jurisdiction to enforce IDEA
settlement agreements reached during a resolution session or
during mediation.  <u>See, e.g.</u>, <u>Traverse Bay Area Intermediate Sch.
Dist. v. Mich. Dep't of Educ.</u>, No. 5:06-CV-139, 2007 WL 2219352,
at *7 (W.D. Mich. July 27, 2007) ("[W]ritten settlement
agreements reached during the mediation process or in a

resolution session which comply with the [IDEA] requirements are now enforceable in state and federal courts." (citations omitted)); <u>Bowman v. Dist. of Columbia</u>, Civil Action No. 05-01933 (HHK), 2006 WL 2221703, at *2 (D.D.C. Aug. 2, 2006) (recognizing that a district court has jurisdiction to enforce a settlement agreement reached either at the resolution meeting or during mediation). The Settlement Agreement in the instant case, however, did not arise from either a resolution session or a mediation. Plaintiffs therefore would not be able to bring an action alleging breach of the Settlement Agreement in federal court, absent some other basis for federal jurisdiction. <u>See</u> <u>L.M. v. Lower Merion Sch. Dist.</u>, Civil Action No. 10-4855, 2011 WL 71442, at *3 (E.D. Pa. Jan. 7, 2011) (noting that many courts have held that, except for settlement agreements reached during the mediation process or in a resolution session, IDEA settlement agreements are not enforceable in United States District Courts (citing <u>H.C. v. Colton-Pierrepont Cent. Sch. Dist.</u>, No. 08-4221, 2009 WL 2144016, at *2 (2d Cir. July 20, 2009); <u>T.D. v. LaGrange</u> <u>Sch. Dist. No. 102</u>, 349 F.3d 469, 479 (7th Cir. 2003); <u>J.M.C. v.</u> <u>La. Bd. of Elementary & Secondary Educ.</u>, 584 F. Supp. 2d 894, 897 (M.D. La. 2008); <u>Traverse Bay Area Intermediate Sch. Dist. v.</u> <u>Mich. Dep't of Educ.</u>, No. 06-139, 2007 WL 2219352, at *6-7 (W.D. Mich. July 27, 2007); <u>Bowman v. District of Columbia</u>, No. 05-01933, 2006 WL 2221703, at *2 (D.D.C. Aug. 2, 2006))).

Plaintiffs agree with the general rule that a hearings

officer does not have jurisdiction to rule upon a claim which
seeks solely to enforce a settlement agreement, [Reply Br. at 3,]
but they maintain that they never asked the Hearings Officer to
enforce the Settlement Agreement.  The Hearings Officer relied
upon H.C. ex rel. L.C. v. Colton-Pierrepont Central School
District, 341 Fed. Appx. 687, 690 (2d Cir. 2009), and A.R. v. New
York City Dep't of Educ., 407 F.3d 65, 78 n.13 (2d Cir. 2005),
for the proposition that a hearings officer does not have the
authority to enforce a private settlement agreement.  [Decision
at 9.]  The court in H.C. noted:

> In this case, plaintiff seeks to enforce only
> those provisions of the May 19, 2006 settlement
> agreement that required defendants to supply H.C.
> with a table, chair, computer, software, and
> certain computer accessories, within six weeks of
> the date of the agreement.  This enforcement
> dispute is purely a matter of determining
> defendant's obligation under the settlement
> agreement.  **It does not concern the
> "identification, evaluation, or educational
> placement of the child, or the provision of a free
> appropriate public education to such child."  20
> U.S.C. § 1415(b)(6)(A).** . . .  Consequently, a due
> process hearing before an IHO was not the proper
> vehicle to enforce the settlement agreement.  See
> A.R. ex rel. R.V. v. New York City Dep't of Educ.,
> 407 F.3d 65, 78 n.13 (2d Cir. 2005) (noting that,
> "as is common in administrative procedures," IHOs
> "have no enforcement mechanism of their own").

341 Fed. Appx. at 690 (emphasis added) (footnote and some
citations omitted).  Similarly, the Hearings Officer found that
Plaintiffs' case did "not concern the identification, evaluation
or educational placement of the Student or the provision of a
free and appropriate public education."  [Decision at 10.]

Plaintiffs' 2009-2010 RIH did argue that Student's IEP team failed to convene a meeting after the Settlement Agreement to incorporate its terms into Student's IEP. [ROA at 5.] If the 2009-2010 RIH 1) argued that the Settlement Agreement called for the DOE to provide certain services to Student, and 2) sought to require his IEP team to incorporate those services into his IEPs, that would merely have been a request to enforce the Settlement Agreement, which the Hearings Officer would not have had subject matter jurisdiction to hear. Similarly, the 2009-2010 RIH sought "make-up" tutoring in reading and math. [ROA at 7.] To the extent that this was a request to compel the DOE to provide the tutoring services that it agreed to provide in the Settlement Agreement, it would also have been an improper request to enforce the Settlement Agreement.

The 2009-2010 RIH, however, did not merely seek the implementation of the services called for in the Settlement Agreement. The Settlement Agreement called for remedial tutoring in math and reading during the remainder of SY 2009-2010, the 2010 ESY, and the first semester of SY 2010-2011. [Settlement Agreement at 1.] Plaintiffs' proposed resolutions in the 2009-2010 RIH also included remedial tutoring in math and reading, [ROA at 7,] but the tutoring services they sought in the RIH were far more extensive than those provided for in the Settlement Agreement. The Settlement Agreement called for one hour of tutoring on school days, in a small group, and eight

hours per week of small group tutoring during ESY 2010. The tutoring sessions were to cover both math and reading. [Settlement Agreement at 1.] The 2009-2010 RIH, however, sought one hour per school day of one-on-one math tutoring and one hour per school day of one-on-one reading tutoring. Even the "make-up" tutoring that Plaintiffs sought in the RIH was on a one-on-one basis. [ROH at 7.] Thus, the tutoring that Plaintiffs sought in the 2009-2010 RIH went beyond the tutoring called for in the Settlement Agreement, both in the number of hours and the amount of individual attention Student would have. In addition, the requested reading tutoring was to include specific material to prepare Student "for his goal of becoming an automotive mechanic[,]" and his reading program was to have "measurable outcomes with the goal of bringing Justin up to grade level reading comprehension, or reimbursement of costs for a private remedial reading program to provide same." [Id.] These requests were not requirements under the terms of the Settlement Agreement.

Further, Plaintiffs' 2009-2010 RIH raised the issue whether the March 3, 2009 IEP and the October 28, 2009 IEP offered Student a FAPE. [ROA at 5-6.] Plaintiffs raised the same arguments for both IEPs: Student's reading, math, and writing goals were inadequate and were not measurable; the services and supports provided were inadequate; Student should be eligible for ESY services; and the IEP failed to address Mother's

concerns. [ROA at 5.] Thus, while Plaintiffs' 2009-2010 RIH did seek to enforce the Settlement Agreement through an order compelling the DOE to convene an IEP team meeting and incorporate the services in Settlement Agreement into the IEP, [id.,] that was not all it sought. The 2009-2010 RIH clearly raised the issue whether the March 3, 2009 IEP and the October 28, 2009 IEP denied Student a FAPE, and sought relief beyond mere enforcement of the Settlement Agreement.

The 2009-2010 RIH also argued that the IEP team had not reviewed Student's reading and math goals since the October 28, 2009 IEP and had not changed them since the March 3, 2009 IEP. [Id. at 5.] This is not an attempt to enforce the Settlement Agreement because, although the Settlement Agreement addressed reading and math tutoring, it did not address any specific goals for those subjects.

Defendants, however, also argue that Mother's testimony at the hearing, and the fact that Plaintiffs did not present any expert testimony, show that what Plaintiffs were actually litigating was the breach of the Settlement Agreement and what remedies were available for that breach. Defendants emphasize Mother's testimony that, if the DOE had honored everything in the Settlement Agreement, the parties would not be in the due process proceeding. [ROA, 9/8/10 Trans., at 91.] In addition, she believed that the Settlement Agreement was still in effect. [Id. at 112.] Mother, however, also testified that the terms of the

Settlement Agreement were not same as the requests in the 2009-2010 RIH. [Id. at 93-94.] There was also a significant amount of testimony and evidence about the content and alleged defects in the two contested IEPs. For example, Peggy Murphy-Hazzard, Psy.D., conducted neuropsychological evaluations of Student in February and March 2009, and wrote a report dated May 22, 2009. [ROA, Pets.' Exh. 21 at 1 (ROA pg. 129).] Her recommended academic accommodations included: time extensions for all reading, writing, and math tasks and tests; remediation in reading, writing, and math on a one-on-one basis; and allowing Student to produce his work in alternate ways. [Id. at 9 (ROA pg. 137).] At the administrative hearing, Mother testified that the October 28, 2009 IEP was the first time the IEP team met after Dr. Murphy-Hazzard's evaluation. Mother also testified that the PWN for the October 28, 2009 IEP does not mention any discussion about whether Dr. Murphy-Hazzard's recommendations were adopted, rejected, or even discussed at all. [ROA, 9/8/10 Trans., at 73-74.] Plaintiffs' counsel questioned Mother about the services she believed were lacking at the time the team formulated the October 28, 2009 IEP. Mother responded that Student "could have benefited (sic) from a one on one or a paraprofessional in the classroom with him. And even . . . tutoring[.]" [Id. at 76.] Mother also complained that Student's annual goals in December 2009 were identical to his annual goals from November 2008, but Student had not mastered any of these

goals.  The goals did not have meaning to her.  They seemed to refer to a test, but she had not seen results of such tests to measure whether Student was making progress towards his goals. [Id. at 83-85.]  As of the date of the hearing, none of Student's IEPs contained a transition plan discussing his intent to attend Honolulu Community College.  [Id. at 86-90.]

Plaintiffs' Hearing Opening Brief placed more emphasis on the Settlement Agreement.  They argued that Student's need for intensive tutoring in reading and math was critical "because none of the 2009-2010 school year nor 2010 summer remedial tutoring [that the DOE agreed in the Settlement Agreement to provide] were ever provided[.]"  [Pltfs.' Hrg. Opening Br. at 4.]  Plaintiffs' Hearing Opening Brief requested, *inter alia*, "[f]or DOE to agree to honor their prior agreements contained in the settlement agreement . . . and incorporate its terms into Justin's IEP plan[.]"  [Id. at 5.]  Thus, Plaintiffs' Hearing Opening Brief and portions of the 2009-2010 RIH indicate that Plaintiffs sought to enforce the Settlement Agreement in the 2009-2010 RIH.

When viewed as a whole, however, the 2009-2010 RIH and the administrative record establish that enforcing the Settlement Agreement was not the only objective of Plaintiffs' 2009-2010 RIH.  The 2009-2010 RIH also challenged whether the Student's March 3, 2009 IEP and October 28, 2009 IEP provided a FAPE and it challenged the IEP team's failure to review Student's reading and math goals for over a year.  These are proper subjects of an

impartial due process hearing. Haw. Admin. R. §§ 8-60-61(a)(1),
8-60-65(a). The Hearings Officer erred in finding that the case
did "not concern the identification, evaluation or educational
placement of the Student or the provision of a free and
appropriate public education." [Decision at 10.] The Court
therefore FINDS that, although the Hearings Officer did not have
subject matter jurisdiction over the portion of the 2009-2010 RIH
seeking enforcement of the Settlement Agreement, the Hearings
Officer did have subject matter jurisdiction over the portions of
the 2009-2010 RIH challenging the March 3, 2009 IEP and the
October 28, 2009 IEP and challenging the failure to review
Student's reading and math goals. The Court CONCLUDES that the
Hearings Officer erred in dismissing the Plaintiffs' case in its
entirety for lack of subject matter jurisdiction.

The Court also notes that, although the Hearings
Officer did not have jurisdiction to enforce the Settlement
Agreement, the Hearings Officer could have considered the terms
of the Settlement Agreement in relation to other issues, such as
determining whether Student received a FAPE. See, e.g., Stanley
C. v. M.S.D. of Sw. Allen Cnty. Sch., 628 F. Supp. 2d 902, 977
(N.D. Ind. 2008) (ruling that, even if the failure to include
measurable goals was a breach of the parties' settlement
agreement, the breach did not constitute a denial of a FAPE);
Sabatini v. Corning-Painted Post Area Sch. Dist., 190 F. Supp. 2d
509, 518 (W.D.N.Y. 2001) (order on motion for attorneys' fees

where, in the underlying decision, the impartial hearing officer relied upon the parties' settlement agreement in concluding that the school district did not prove it provided the student with a FAPE); <u>Reid ex rel. Reid v. Sch. Dist. of Philadelphia</u>, No. Civ. A. 03-1742, 2004 WL 1926324, at *3-4 (E.D. Pa. Aug. 27, 2004) (holding that the breaches of the settlement agreement in that case constituted a denial of a FAPE).

The Settlement Agreement, however, may have had limited relevance to the issue whether the March 3, 2009 IEP and the October 28, 2009 IEP provided a FAPE. First, the Settlement Agreement expressly states that it "does not constitute any admission of wrongdoing on the part of either party." [Settlement Agreement at 1.] Thus, the Settlement Agreement does not constitute an admission by the DOE either that it denied Student a FAPE or that the services called for in the Settlement Agreement are what is necessary to provide Student with a FAPE. More importantly, however, the parties did not execute the Settlement Agreement until January 12, 2010, **after** Student's IEP team formulated both of the challenged IEPs. The Settlement Agreement, and any alleged breach thereof, are therefore not controlling as to whether or not Student was provided with a FAPE in the March 3, 2009 IEP and the October 28, 2009 IEP. Defining this matter as an enforcement of the Settlement Agreement is akin to arguing that an umpire should have cancelled a baseball game due to rain because of a thunderstorm that occurred the day after

the game was played.

This district court has recognized that:

IEPs must be judged "**at the time the plans were
drafted**." <u>Adams v. State of Oregon</u>, 195 F.3d
1141, 1149 (9th Cir. 1999). The <u>Adams</u> court went
on to quote a Third Circuit case, which stated:
Actions of the school systems cannot . . . be
judged exclusively in hindsight. . . . [A]n
individualized education program ("IEP") is a
snapshot, not a retrospective. In striving
for "appropriateness," an IEP must take into
account what was, and was not, objectively
reasonable when the snapshot was taken, that
is, at the time the IEP was drafted.
<u>Id.</u> (quoting <u>Fuhrmann v. East Hanover Bd. of
Educ.</u>, 993 F.2d 1031, 1041 (3d Cir. 1993))
(citations omitted). As such, IEPs are examined
"prospectively, rather than retrospectively."
<u>B.V. v. Dep't of Educ., State of Hawaii</u>, 451 F.
Supp. 2d 1113, 1126 (D. Haw. 2005).

<u>Marcus I. ex rel. Karen I. v. Hawaii, Dep't of Educ.</u>, Civ. No.

08-00491 DAE/BMK, 2009 WL 3378589, *9-10 (D. Hawai`i Oct. 21,

2009) (alterations in <u>Marcus I.</u>) (emphasis added). Thus, in the

present case, the Hearings Officer could have considered the

Settlement Agreement, but only to the extent that he found it

relevant to the issues properly before him, such as whether the

challenged IEPs provided a FAPE at the time that they were

drafted.[8]

**III. <u>Remand to the Hearings Officer</u>**

Plaintiffs argue that a remand to the DCCA is not

appropriate and that the Court should rule on the merits of the

---

[8] Plaintiffs' emphasis on the Settlement Agreement and the
DOE's alleged breach may well have caused some confusion as to
what issues were before the Hearings Officer.

case based on the Court's examination of the administrative record. Plaintiffs note that, since issuing the Decision, the Hearings Officer has left the DCCA and, if there is a remand, the case would have to be reassigned. They argue that time is of the essence because Student is about to graduate. [Opening Br. at 26.]

This Court has the discretion to award compensatory education as an equitable remedy in cases where the student did not receive a FAPE. See B.T. ex rel. Mary T. v. Dep't of Educ., 676 F. Supp. 2d 982, 989-90 (D. Hawai`i 2009) (citing Parents of Student W. v. Puyallup School Dist., No. 3, 31 F.3d 1489, 1497 (9th Cir. 1994); Forest Grove Sch. Dist. v. T.A., 523 F.3d 1078, 1084-85 (9th Cir. 2008)). The Court must consider whether to award compensatory education "on a fact-specific basis[,]" and the Court must design such an award "to ensure that student is appropriately educated within the meaning of the IDEA." Id. (citations and internal quotation marks omitted).

In the present case, the Court cannot award compensatory education because the record is not fully developed as to the issues whether the contested IEPs denied Student a FAPE and the issue regarding the failure to review Student's math and reading goals. Further, even assuming arguendo that this Court could find a denial of FAPE, this Court would not be able to determine what services Student requires at this point. The IEP team formulated the contested IEPs and last reviewed Student's

reading goals in 2009, and the administrative hearing occurred in September 2010. It is now June 2011, and the existing record may not be an accurate reflection of what is currently necessary to ensure that Student receives an appropriate education under the IDEA. <u>Cf.</u> <u>id.</u> at 990 ("It is now December of 2009, and the particular services that B.T. requires at this point may not be what has been identified in the November 2007 IEP.").

The Court therefore REMANDS the instant case to the DCCA to reassign the case to another hearings officer to consider Plaintiffs' claims that the March 3, 2009 IEP and the October 28, 2009 IEP did not provide a FAPE and Plaintiffs' claim concerning the failure to review Student's math and reading goals.

<u>**CONCLUSION**</u>

On the basis of the foregoing, the Hearings Officer's Findings of Fact, Conclusions of Law and Decision, filed October 11, 2010, is HEREBY AFFIRMED IN PART AND REVERSED IN PART. The Court AFFIRMS the Decision to the extent that it dismissed the portion of Plaintiffs' 2009-2010 Request for Impartial Hearing seeking to enforce the Settlement Agreement. The Court REVERSES the Decision to the extent that it dismissed: 1) the portion of Plaintiffs' 2009-2010 Request for Impartial Hearing alleging that Student's March 3, 2009 IEP and October 28, 2009 IEP did not provide a FAPE; and 2) the portion of the RIH challenging the failure to review Student's math and reading goals. The Court

REMANDS this case to the DCCA to reassign the case to another hearings officer to rule upon those issues, and REQUESTS that the DCCA expedite this matter to the fullest extent possible because Student has either graduated or will graduate at the end of the 2010-2011 extended school year.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 17, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge